IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

Ernest Maurice Allen,               )
                                       )
          Petitioner,        )
                                       )     Civil Action No. 4:24-2899-BHH
v.                              )
                                       )          **ORDER**
Warden Jackson,              )
                                       )
          Respondent.     )
_____ )

This matter is before the Court on Petitioner Ernest Maurice Allen's ("Petitioner" or "Allen") pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (ECF No. 1.) On August 23, 2024, Respondent filed a motion for summary judgment, to which Petitioner filed a response. (ECF Nos. 29, 30, 36.) In accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02, D.S.C., the matter was referred to a United States Magistrate Judge for initial review.

On October 31, 2024, Magistrate Judge Thomas E. Rogers III filed a Report and Recommendation ("Report") outlining the issues and recommending that the Court grant Respondent's motion for summary judgment in its entirety. (ECF No. 37.) Attached to the Report was a notice advising the parties of the right to file written objections to the Report within fourteen days of being served with a copy.

On November 4, 2024, Petitioner filed a motion to amend or supplement his pleadings. (ECF No. 39.) Respondent filed a response in opposition to Petitioner's motion, and Petitioner filed a reply. (ECF Nos. 40, 44.) After being granted an extension of time to file objections to the Report, Petitioner filed objections on December 2, 2024. (ECF No. 45.) For the following reasons, the Court overrules Petitioner's objections, adopts the

Magistrate Judge's Report;  grants Respondent's motion for summary judgment; and denies Petitioner's motion to amend or supplement.

## **BACKGROUND**

Petitioner is confined in the Lee Correctional Institution of the South Carolina Department of Corrections.  Petitioner was indicted by the Kershaw County Grand Jury on July 17, 2023, for three counts of attempted murder and possession of a weapon during the commission of a violent crime, and on August 21, 2013, Petitioner was indicted for the crime of resisting arrest with a deadly weapon, first offense.  Petitioner also was indicted on September 11, 2013, for two additional counts of attempted murder.

Petitioner was represented by attorney Jason D. Kirincich and proceeded to trial before the Honorable James R. Barber.  Prior to the end of trial, Judge Barber directed a verdict on one of the counts of attempted murder, and the jury convicted Petitioner for two counts of attempted murder, assault and battery of a high and aggravated nature ("ABHAN"), possession of a firearm during the commission of a violent crime, and resisting arrest with a deadly weapon.  Judge Barber sentenced Petitioner to a 20-year term of incarceration for each count of attempted murder and ABHAN, and two years for resisting arrest with a deadly weapon, with the sentences to run concurrently.

Petitioner filed a direct appeal, represented by appellate attorney Thomas Jarrett Bourchette, raising the following issues:

1.  Did the trial Court commit reversible error when it failed to grant appellant's motion for directed verdict on the charge of resisting arrest, when the evidence showed that Appellant did not submit to the arrest and thus no arrest was ever effectuated?

2.  Did the trial court commit reversible error when it allowed evidence to be submitted to the jury that the Appellant was facing substantial jail

2

> time, as a motive and intent exception to Rule 404(b), even though no
> rule 403 prejudice analysis was conducted, and the PWID charges
> bore no logical connection to the charges for which he was on trial?

(ECF No. 29-2 at 4).

While Petitioner's appeal was pending, the South Carolina Court of Appeals decided *State v. King*, 412 S.C. 403, 772 S.E.2d 189 (2015), where the court held that attempted murder requires proof of a specific intent to kill. In light of *King*, Petitioner filed a motion to supplement the final brief, but the court of appeals denied the motion on March 28, 2016.

After the court of appeals issued a decision affirming the trial court and dismissing Petitioner's appeal, Petitioner filed a pro se motion for rehearing on May 17, 2016. The court of appeals wrote Petitioner to inform him that no action would be taken on his pro se motion because he was represented by counsel. Petitioner's counsel then proceeded to file a motion to be relieved as counsel, and the court granted that motion and allowed Petitioner to proceed pro se. On August 25, 2017, the court denied a writ of certiorari.

Petitioner filed an application for post-conviction relief ("PCR") on October 27, 2018. (ECF No. 29-3 at 4.) Petitioner was represented by attorney Lindsey A. McCallister, who filed an amended PCR application on June 1, 2018. (*Id.* at 20.) On August 27, 2018, Petitioner filed a second amended PCR application. A hearing was held before the Honorable Kristi Curtis. The order of dismissal outlined the following grounds:

1.    Appellate counsel was ineffective for failing to raise the issue of "specific intent" as an element of attempted murder in the Initial Brief, when the jury instruction was clearly objected to at trial by trial counsel and preserved for direct appeal;

2.    Trial counsel was ineffective for improperly requesting an ABHAN charge be offered to the jury as a lesser-included offense when there was no evidence anyone was injured. Further, trial counsel was ineffective for not objecting when the charge was actually given to the

3

jury, for suggesting the trial court erroneously re-instruct the jury that "it does not have to find an actual battery to find ABHAN," and for failing to object when the ABHAN verdict was announced to the court;

3.    Trial counsel was ineffective for failing to object when the trial court charged the jury malice may be inferred from the use of a deadly weapon;

4.    Trial counsel was ineffective for failing to explain the elements and the nature of the charges to Applicant, and therefore failed to adequately explain the potential benefit that could arise from testifying in his own defense regarding specific intent. Accordingly, Applicant's decision to waive his right to testify was uninformed and he was deprived of the opportunity to present his own testimony regarding his intent at the time of the incident.

(ECF No. 29-3 at 91).

During the PCR hearing, Petitioner's trial counsel, Petitioner, and Petitioner's appellate counsel all testified. (*Id.* at 38-87.) After the evidentiary hearing, the PCR court issued its order of dismissal on August 30, 2019, denying in part and granting in part the PCR application. (*Id.* at 88.) Specifically, the PCR court ruled that Petitioner had established a constitutional violation as to his ABHAN conviction (explaining that ABHAN was not an appropriate lesser included charge based on the evidence presented at trial, as there was no evidence of injury to any of the officers) and that trial counsel was ineffective for requesting an ABHAN charge. Thus, the PCR Court granted Petitioner relief as to the ABHAN conviction; however, the PCR court denied the remaining allegations in the PCR application. No Rule 59 motion was filed.

On July 16, 2020, however, Petitioner filed a petition for a writ of certiorari before the South Carolina Supreme Court. The state filed a return, and on December 11, 2020, the South Carolina Supreme Court transferred the petition to the South Carolina Court of Appeals. After hearing oral arguments, the court of appeals issued an opinion on April 17,

2024, affirming the decision of the PCR court and denying a writ of certiorari. (ECF No. 29-8.) The remittitur was delivered to the Kershaw County Clerk of Court on May 6, 2024, and was filed on May 8, 2024. (ECF No. 29-9.)

Petitioner filed the instant § 2254 petition on June 14, 2024, alleging the following:

**Ground One:**     Did the Court of Appeals err in finding that the trial court did not err in holding that the offense of Attempted Murder does not require a specific intent to kill.

**Supporting Facts:**     The trial court instructed the jury that specific intent is not an element of Attempted Murder.

**Ground Two:**     Did the Court of Appeals err in finding that the trial court did not err in holding that malice could be inferred from the use of a deadly weapon when the trial judge charged the jury with the lesser-included offense of ABHAN.

**Supporting Facts:**     After trial court saw evidence in support of its ABHAN instruction trial counsel failed to correct the jury instruction that malice could be inferred from the use of a deadly weapon.

**Ground Three:**     Did the PCR court err in finding Appellate Counsel was not ineffective for abandoning and failing to raise the preserved issue that the offense of attempted murder does not require a specific intent to kill?

**Supporting Facts:**     Trial counsel objected to the trial court's instruction that a specific intent is not an element of attempted murder. Appellate counsel abandoned this issue on Direct Appeal.

**Ground Four:**     Did the PCR court err in finding trial counsel was not ineffective for failing to object to the trial court's jury instruction that malice could be inferred from the use of a deadly weapon. When the judge charged the jury with the lesser included offense of ABHAN?

**Supporting Facts:**     Trial counsel was ineffective for failing to object to the trial court's instruction that malice may be inferred from the use of a deadly weapon simply because the court

5

instructed the lesser-included offense of ABHAN.

(ECF No. 1-2 at 5-10) (errors in original).

## STANDARDS OF REVIEW

### I.      The Magistrate Judge's Report

The Magistrate Judge makes only a recommendation to the Court.      The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court.  *Mathews v. Weber*, 423 U.S. 261 (1976).  The Court is charged with making a *de novo* determination only of those portions of the Report to which specific objections are made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

In the absence of specific objections, the Court reviews the matter only for clear error.  *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'") (quoting Fed. R. Civ. P. 72 advisory committee's note).

### II.      Summary Judgment

To grant a motion for summary judgment, this Court must find that "there is no genuine issue as to any material fact."  Fed. R. Civ. P. 56(c).  The Court is not to weigh the evidence, but rather to determine if there is a genuine issue of fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  If no material factual disputes remain, then

6

summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). All evidence should be viewed in the light most favorable to the non-moving party. *See Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990).

## III.    Leave to Amend a Pleading

Rule 15 of the Federal Rules of Civil Procedure provides that "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962). A motion to amend the complaint under Rule 15(a) should be made "as soon as the necessity for altering the pleading becomes apparent." *Id.* at 41 (internal citation omitted). "The law is well settled 'that leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.'" *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)) (emphasis in original). To deny a motion to amend for futility, the amendment must be "clearly insufficient on its face." *Oroweat Foods Co.*, 785 F. Supp. 2d at 819.

## DISCUSSION

## I.    Habeas Corpus Relief

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*,

134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In *Williams v. Taylor*, 529 U.S. 362 (2000), the Supreme Court explained that § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. *Id.* at 404-05. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in controlling cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Id.* at 405-06. A federal habeas court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from Supreme Court decisions but unreasonably applies it to the facts of the particular case. *Id.* at 407-08. Factual determinations made by the state "shall be presumed to be correct," and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## II.  Exhaustion and Procedural Bar

Before a Petitioner can obtain relief under § 2254, he must first clear a series of procedural hurdles. For example, a state prisoner must exhaust his state court remedies by "present[ing] his claim to the state's highest court" before a federal court can grant relief

on the merits of a claim.[1]  *Mahdi v. Stirling*, 20 F.4th 846, 892 (4th Cir. 2021); *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991).  Thus, "[t]he exhaustion doctrine bars a claim if it is raised for the first time in a federal habeas petition."  *Mickens v. Taylor*, 240 F.3d 348, 356 (4th Cir. 2001) (en banc); *see also Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998).

In other words, to exhaust a federal habeas corpus claim, a petitioner must "fairly present[ ] to the state court both the operative facts and the controlling legal principles associated with each claim."  *Longworth v. Ozmint*, 377 F.3d 437, 448 (4th Cir. 2004) (citation and internal quotation marks omitted).  This means that a petition must present the claim to the state court "face-up and squarely."  *Id.*  Otherwise, the state will be deprived of its "opportunity to correct the constitutional violation in the first instance."  *Id.* (internal quotation marks omitted).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default–often referred to as a procedural bar–one example of which occurs 'when a habeas petitioner fails to exhaust available state remedies and the court to which [he] would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred."  *Mahdi*, 20 F.4th at 892 (quoting *Breard*, 134 F.3d at 619) (internal quotation marks omitted).  Another way procedural default occurs

---

[1] The exhaustion requirement exists to promote comity within our federal system.  As the Supreme Court has explained:

> Because "it would be unseemly in our dual system of government for a federal district court to upstate  a state court conviction without an opportunity to the state courts to correct a constitutional violation," federal courts apply the doctrine of comity, which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant on the litigation, have had an opportunity to pass upon the matter."

*Rose v. Lundy*, 455 U.S. 509, 518 (1982) (quoting *Darr v. Burford*, 399 U.S. 200, 204 (1950)).

9

is when "a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for dismissal." *Breard*, 134 F.3d at 619.

Nevertheless, because the requirement of exhaustion is not jurisdictional, in very limited circumstances a federal court may consider claims that have not been presented to the highest South Carolina court with jurisdiction. *Granberry v. Greer,* 481 U.S. 129, 131 (1989). Specifically, a federal court may review a procedurally defaulted claim if the petitioner can demonstrate sufficient cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim would result in a miscarriage of justice because the petitioner is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986). "Cause" is defined as "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." *Strickler v. Greene*, 527 U.S. 263, 283 n. 24 (1999) (quoting *Murray*, 477 U.S. at 488). A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor that hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Murray*, 477 U.S. at 495-96. Absent a showing of cause, the court is not required to consider actual prejudice. *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he also must show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. A petitioner must show an actual and substantive disadvantage as a result of the error, not merely the possibility of harm.

As an alternative to demonstrating cause for failure to raise a claim, a petitioner may

show a miscarriage of justice. To demonstrate a miscarriage of justice, the petitioner must show that he is actually innocent. *See Murray*, 477 U.S. at 496 (holding that a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of someone who is actually innocent"). Actual innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*, 523 U.S. 614, 623 (1998).

## III.    Ineffective Assistance of Counsel

The Sixth Amendment requires that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense," and that such assistance be effective. U.S. Const. Amend. VI; *Strickland v. Washington*, 466 U.S. 668, 686 (1984). A meritorious ineffective assistance claim must demonstrate two things: first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the defense. *Id.* at 687-98. The first part of the test, a court's evaluation of counsel's performance, must be "highly deferential" under this standard, so as not to "second-guess" the performance. *Id.* at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks and citation omitted); *see also Fields v. Attorney Gen. of Maryland*, 956 F.2d 1290, 1297-99 (4th Cir. 1992); *Roach v. Martin*, 757 F.2d 1463, 1476 (4th Cir. 1985). To establish prejudice and thereby fulfill the second prong of the ineffective assistance test, the challenging defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

*Strickland*, 466 U.S. at 694-95. Additionally, as the Supreme Court explained in *Harrington v. Richter*:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential,"[ ], and when the two apply in tandem, review is "doubly" so [ ]. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. [ ] Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

562 U.S. 86, 105 (2011) (internal citations omitted). "For purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Id*. at 101 (quoting *Williams v. Taylor*, 529 U.S. 362, 410 (2000). Ultimately, "[a] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.*

## IV.    Petitioner's Claims and the Court's Review

### Ground One

In the Report, the Magistrate Judge first considered ground one of the petition, where Petitioner asserts that the state court misinterpreted S.C. Code Ann. § 16-3-29 (2010), which provides: "A person, with intent to kill, attempts to kill another person with malice aforethought, either express or implied, commits the offense of attempted murder." Ultimately, the Magistrate Judge agreed with Respondent that Petitioner's first ground is based on state law, i.e., whether the state courts misinterpreted a state statute. The Magistrate Judge explained that a state court's decision on a question of state law is binding in federal court and is not cognizable on habeas review. Accordingly, the

Magistrate Judge recommended that the Court grant summary judgment in favor of Respondent as to ground one.

In his objections, Petitioner asserts that this issue is not based solely on state law, and he claims that the state's misinterpretation of the state law violated his Fourteenth Amendment right to a fair trial.  (ECF No. 45 at 9.)  Petitioner states: "It is without question that the trial court erroneously instructed the jury on the attempted murder statute and the elements of attempted murder, as well as the lesser included offenses of attempted murder in order to convict the petitioner of attempted murder, subjecting petitioner to a minimum of twenty years rather than introduce the correct less[er] included defense of assault and battery first-degree which carries a maximum of not more than ten years, . . . ."  (ECF No. 45 at 9.)

After *de novo* review, the Court finds no merit to Petitioner's objection.  First, the Court agrees with the Magistrate Judge that ground one of the § 2254 petition effectively challenges the state court's interpretation of a South Carolina statute, namely, S.C. Code § 16-3-29, . . . . , and it is outside the province of this Court to reexamine a state court's decision on a state law question.  Furthermore, the Court rejects Petitioner's attempt to transform this state law question into a federal question merely by asserting a due process violation.  Finally, and of importance, the Court notes that Petitioner's argument entirely overlooks the fact that the court of appeals did not actually find that the trial court did not err in holding that attempted murder does not require a specific intent to kill.  Rather, the court of appeals decided that the evidence supported the PCR court's finding that Petitioner did not establish prejudice resulting from the specific intent issue.  In fact, the court of appeals stated: "[r]egardless of whether appellate counsel was deficient, we hold the

13

evidence presented supports the PCR court's finding that Petitioner did not establish prejudice. The State presented evidence that Petitioner turned and fired at officers pursuing him, *which constituted evidence of specific intent to kill*." *Allen v. State of South Carolina*, No. 2019-002056, 2023 WL 11075100, *3 (2023) (emphasis added). For these reasons, the Court overrules Petitioner's objection and agrees with the Magistrate Judge that Respondent is entitled to summary judgment on ground one.

<u>Grounds Two and Four</u>

In ground two, Petitioner argues that the court of appeals erred by finding no error on the part of the trial court when it held that malice could be inferred from the use of a deadly weapon and when it charged the jury with the lesser included offense of ABHAN. Relatedly, in ground four, Petitioner argues that the PCR court erred in finding that trial counsel was not ineffective for failing to object to the trial court's jury instruction regarding the inference of malice from the use of a deadly weapon.

In the Report, the Magistrate Judge considered these grounds in tandem and found them both moot because the PCR court granted Petitioner's PCR application with regard to the ABHAN conviction. Thus, the Magistrate Judge found that Petitioner already received the relief he seeks with regard to the ABHAN charge and related issues.

In his objections, Petitioner asserts that "the reversal of the ABHAN conviction in no part does not in no way [sic] correct the failure of trial counsel to introduce the more accurate lesser included offense of assault and battery first degree, or his failure to object to the malice instruction, an[ ] instruction that has been made void due to its very likely possibility of tainting a jury, [ ], as it was these failures by trial counsel that allowed the petitioner to be convicted of attempted murder."  (ECF No. 45 at 10.)  In other words,

14

Petitioner objects "that he is NOT arguing that he was wrongfully convicted of ABHAN and sentenced to 20 years because there was no injury . . . ." (*Id.* at 11 (emphasis in original).) Instead, Petitioner states that he "IS however, arguing that the inferred malice instruction was improper," based on *Belcher* and *Burdette*. (*Id.* (emphasis in original).) According to Petitioner, he has not received the relief he seeks because reversal of the ABHAN conviction "did not correct trial counsel's failure to object to the inferred malice instruction, nor did it correct any influence the inferred malice instruction may have had on the jury, or correct trial counsel's failure to introduce the lesser included offense of assault and battery first degree." (*Id.*)

After de novo review, the Court finds Petitioner's objection unavailing. First, as a practical matter, and as the Magistrate Judge already explained, the PCR court actually granted Petitioner's application with respect to the ABHAN conviction. Thus, Petitioner is not serving a sentence for ABHAN at this time. Regardless, however, the Court also notes that Petitioner's arguments overlook the actual findings by the court of appeals. Specifically, the court of appeals found that, *even if trial counsel was ineffective* for failing to object to the trial court's jury instruction that malice could be inferred by the use of a deadly weapon, Petitioner still failed to establish that he was prejudiced by trial counsel's performance. Furthermore, the court of appeals ruled: "Based on the evidence presented, we hold there is no reasonable probability the outcome would have been different had the trial court not charged that malice could be interred by the use of a deadly weapon." *Allen v. State of South Carolina*, No. 2019-002056, 2023 WL 11075100, *4.

Ultimately, this Court does not find that the state court's decision was contrary to, or involved an unreasonable application of clearly established federal law; nor does the

15

Court find that the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, Respondent is entitled to summary judgment on grounds two and four of Petitioner's § 2254 petition.

Ground Three

Petitioner argues in ground three of his petition that the PCR court erred when it found that appellate counsel was not ineffective for abandoning and failing to preserve the issue that the offense of attempted murder does not require a specific intent to kill.

In the Report, the Magistrate Judge quoted, at great length, the PCR specific court's findings on this issue and ultimately determined that the PCR court's rejection of Petitioner's ineffective-assistance-of-appellate-counsel ground was not contrary to, or an unreasonable application of, clearly established federal law. Nor did the Magistrate Judge find the PCR court's adjudication of the issue based on an unreasonable determination of the facts. (ECF No. 37 at 15-18.) Accordingly, the Magistrate Judge recommended that the Court grant summary judgment in favor of Respondent on ground three.

In his objections, Petitioner asserts that "at the time of trial and during the appeal, even though appellate counsel claims to have researched and used the existing authority that supported the attempted murder instruction given appellate counsel and the PCR court both erroneously relief on case law prior to the 2010 amendment." (ECF No. 45 at 13.) In other words, Petitioner asserts that counsel relied on law "that was abolished by the new attempted murder statute," and Petitioner asserts that "with due diligence appellate counsel could have discovered at least one of the[ ] cases explaining attempt crimes." (*Id.* at 14-15.)

After *de novo* review, the Court finds no merit to Petitioner's objection. As the

Magistrate Judge correctly noted, the South Carolina Court of Appeals issued its opinion in *King* subsequent to appellate counsel filing the final briefs in the appeal. Furthermore, the court of appeals explained, "*regardless of whether appellate counsel was deficient*, [ ] the evidence presented supports the PCR court's finding that Petitioner did not establish prejudice." *Allen v. State of South Carolina*, No. 2019-002056, 2023 WL 11075100, *3 (emphasis added).

Here, the Court fully agrees with the Magistrate Judge's findings as to ground three. (*See* ECF No. 37 at 20-22.) Thus, the Court finds that Respondent is entitled to summary judgment on this ground.

<u>Petitioner's Motion to Amend or Supplement Pleadings</u>

Prior to filing objections to the Report, Petitioner filed a motion to amend or supplement pleadings, wherein he alleges the following issues, taken verbatim from his motion:

1.    A Fourteenth Amendment Violation of due process for:

    a)    the unconstitutional allowance of the Solicitor to control the criminal docket. State v. Langford (2012)

    b)    appointed appellate counsel abandoning the issue of specific intent for no apparent strategic reason. Appellate counsel was expected to argue and not abandon the specific intent issue because the applicant was entitled to appellate counsel's argument of the ONLY preserved meritorious issue.

    c)    Chief Appellate Attorney Robert M. Dudek, allowing the abandonment of the specific intent issue after discussing the applicant's case wit Thomas J. Bouchette (appointed appellate counsel). Furthermore, while being assigned as the Chief Appellate Attorney in the present case and also the King case which raised the issue of specific intent to kill. Additionally, for failing to file a Motion to Amend based on Newly Discovered Evidence on the applicant's behalf pursuant to Rule 60(b)

17

immediately, or at the very least in a timely manner after the King ruling came down and before the filing of the Final Brief by appointed appellate counsel.

d)   The Court of Appeals erroneously denying the Motion to Amend Based on Newly Discovered Evidence because the Final Brief was already filed, however, according to Rule 60(b), the applicant had at least one year to put the court on notice of the King ruling, and should have received the benefit of King retroactively according to Griffin v. Kentucky, 479 U.S. 314 (1987).

2.   A Fifth Amendment Violation of due process for appointed trial counsel coercing the applicant not to testify.

3.   A Sixth Amendment Violation of:

a)   the right to testify for appointed trial counsel coercing the applicant not to testify in order to receive the last argument.

b)   the right to Choice of Counsel when appointed trial counsel failed to file a Motion to be Relieved as Counsel in order to remove himself from the applicant's case when he was asked to do so by the applicant and also by an attorney selected by the applicant.

c)   Effective Assistance of Counsel when Chief Appellate counsel (Robert M. Dudek), the same attorney assigned to both the applicant's case and the King case, which addressed and clarified the issue of 'specific intent' to kill, allowed appointed appellate counsel to abandon the only preserved issue after discussing the applicant's case with appointed appellate counsel. Additionally, for failing to file a Motion to Amend Based on Newly Discovered Evidence on the applicant's behalf, or put appellate counsel on notice to file said motion on the applicant's behalf addressing the ruling in King, which clarified that a specific intent to kill is indeed an element of attempted murder. Furthermore, for failing to file said motion immediately, or at the very least in a timely manner, when the ruling in King came down just three months after the Initial Brief was filed and the Final Brief was not yet filed.

(ECF No. 39 at 11-12.)

First, with respect to Petitioner's attempt to raise a due process claim by arguing that

it was unconstitutional for the Solicitor to control the docket, the Court notes that *Langford* was decided prior to Petitioner's case being called for trial. Thus, at the time Petitioner proceeded to trial, the Solicitor was no longer in control of the docket, and Petitioner has not shown impermissible "judge shopping." Therefore, the Court finds Petitioner's claim futile.

As to Petitioner's purported Sixth Amendment claim based on the alleged denial of "counsel of his choice," the record contains no evidence to support Petitioner's assertion that the Solicitor interfered in his case by telling an attorney not to take his case. Petitioner had thirteen months from the time he was arrested to hire counsel, and he was always represented by a public defender, who informed the court that the attorneys to whom Petitioner reached out for representation declined to represent Petitioner. Thus, the Court also finds this claim futile.

As to the remaining additional allegations, Petitioner asserts that he was denied due process by the trial court's failure to give proper jury instructions and as a result of counsel's alleged ineffective assistance of counsel. However, the Court finds that these matters were technically raised in Petitioner's initial petition, and the Court has already considered and rejected Petitioner's claims related to the trial court's failure to give proper jury instructions and as to both trial counsel's and appellate counsel's alleged ineffective assistance of counsel. Furthermore, the Court reiterates that a Petitioner cannot transform a state law matter into a federal matter simply by asserting a due process violation. *Langford*, 110 F.3d 1380.

Ultimately, after a careful review of the issues raised in Petitioner's motion to amend or supplement, the Court denies the motion on the basis of futility. Stated plainly, the Court

finds that the additional claims Petitioner seeks to raise are either without merit or duplicative to arguments that Petitioner previously raised, and the Court has considered and rejected those arguments for the reasons outlined in this order.  Accordingly, the Court denies Petitioner's motion to amend or supplement.

## **CONCLUSION**

Based on the foregoing, the Court overrules Petitioner's objections (ECF No. 45); the Court adopts and specifically incorporates the Magistrate Judge's Report (ECF No. 37); the Court grants Respondent's motion for summary judgment (ECF No. 30) in its entirety; the Court denies Petitioner's motion to amend or supplement (ECF No. 39); and the Court finds moot any other outstanding motions.

**IT IS SO ORDERED.**

/s/Bruce H. Hendricks_____
United States District Judge

March 12, 2024
Charleston, South Carolina

## **CERTIFICATE OF APPEALABILITY**

The governing law provides that:

(c)(2) A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.

(c)(3) The certificate of appealability . . . shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c).  A prisoner satisfies the standard by demonstrating that reasonable jurists would find this Court's assessment of his constitutional claims debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable.  *See*

*Miller–El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir.2001).  Here, the Court finds that the legal standard for the issuance of a certificate of appealability has not been met.  Therefore, a certificate of appealability is denied.